UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FREDERICK DOYLE
and JODY DOYLE,

                    Plaintiffs,

             -v-                          5:23-CV-1467

TOWN OF MANLIUS, NEW YORK,
JOHN DEER, SARA BOLLINGER,
ELAINE DENTON, KATELYN
KRIESEL, WILLIAM NICHOLSON,
HEATHER WATERS, JOHN DOE(S),
and JANE DOE(S),

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

BOSMAN LAW FIRM, LLC       AJ BOSMAN, ESQ.
Attorneys for Plaintiffs        ROBERT J. STRUM, ESQ.
3000 McConnellsville Road
Blossvale, NY 13308

KENNEY SHELTON           DAVID H. WALSH, IV, ESQ.
    LIPTAK NOWAK LLP      DANIEL CARTWRIGHT, ESQ.
Attorneys for Defendants
4615 North Street
Jamesville, NY 13078

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

On November 13, 2023, plaintiff Frederick Doyle ("Mr. Doyle"), a retired police officer, along with his wife Jody ("Mrs. Doyle"), filed this civil action in Supreme Court, Onondaga County alleging that Mr. Doyle's former employer, defendant Town of Manlius, New York (the "Town"), acting through the six defendant-members of the Town's Board, "unlawfully reduced and altered medical insurance benefits" owed to him and other law enforcement officers under the terms of a collective bargaining agreement with his union.

Plaintiffs' nine-count complaint asserts claims under 42 U.S.C. § 1983 for a denial of due process (Count One) and equal protection (Count Six), a claim under the Age Discrimination in Employment Act ("ADEA") (Count Three), a claim under the New York State Human Rights Law ("NYSHRL") (Count Four), two claims under the New York State Constitution (Counts Two and Five), and three common law claims for tortious interference (Count Seven), negligence (Count Eight), and breach of contract (Count Nine).

On November 22, 2023, defendants removed the action to this forum on the basis of federal-question jurisdiction; *i.e.*, plaintiffs' complaint asserted federal claims under § 1983 and the ADEA. Thereafter, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss plaintiffs' complaint in its entirety on January 24, 2024. Dkt. No. 9.

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  <u>BACKGROUND</u>

The following facts are taken from plaintiffs' complaint, Dkt. No. 2, and are assumed true for the purpose of assessing the motion to dismiss.

Until he retired in January of 2000, Mr. Doyle enjoyed a 20-year career with the Town's police department.  Compl. ¶ 4.  As a retiree, Mr. Doyle is entitled to certain statutory benefits under state law and health insurance benefits described in a collective bargaining agreement (the "CBA") between the Town and the police benevolent association that represents the Town's current and retired police officers (the "Union").  *Id*. ¶¶ 4–5, 11.

In 2022, plaintiffs, who are both older than 65, enjoyed primary health insurance coverage through Medicare, a federally funded health insurance program.  Compl. ¶ 14.  As relevant here, plaintiffs also received secondary and supplemental insurance coverage through "Plan M" of the Onondaga County Employee Benefits Agreement ("OCEBA"), which was available to active and retired Union members under the CBA.  *Id*. ¶ 13.

At some point in 2022, the Town, acting through the defendant-members of the Town Board, entered into negotiations with a company called Humana "to change the retiree health insurance coverage for only those retirees over the age of 65" to a "Medicare Advantage" plan.  Compl. ¶ 15.  The complaint

alleges these negotiations were undertaken "without notice or an opportunity to be heard by Plaintiffs, the Union, or any of its affected members, past or present." *Id*. According to the complaint, the Town's conduct ran afoul of Article XXII of the CBA, which imposed certain consultation obligations on both parties vis-à-vis health insurance benefits. *Id*. ¶ 16.

On November 17, 2022, the Town, "unilaterally and without notice or concern for affected beneficiaries, changed the retiree health insurance coverage for retirees 65 years of age and older from OCEBA Plan M to [the] Humana Medicare Employe PPO plan." Compl. ¶ 17. This change in benefits was scheduled to become effective on January 1, 2023. *Id*.

On November 28, 2022, plaintiffs received from the Town a letter telling them about the change in health care benefits. Compl. ¶ 18. But according to the complaint, this letter and accompanying documentation "materially misrepresented the coverage and misled recipients by including" certain alleged misstatements:

> -The letter falsely stated that "[y]ou can choose any Medicare provider, but you will save money by using providers from our large network."
>
> -The letter failed to notify recipients that the change would affect their medical treatment coverage previously covered by the OCEBA.
>
> -The letter failed to notify recipients that the change would deprive them of "traditional Medicare."

> -The included informational booklet falsely stated that "[y]ou can go to any Medicare-approved provider or hospital, but you may save money using in-network providers.

Compl. ¶ 18.

Around the time plaintiffs received this letter notifying them of the change in coverage, Mrs. Doyle was diagnosed with cancer. Compl. ¶ 19. She and her husband received health care through a large healthcare provider called Presbyterian Healthcare Services ("PHS"). *Id.* Importantly, in the last few months of 2022, Mrs. Doyle began receiving cancer treatment that "required strict adherence to scheduled chemotherapy." *Id.*

Mrs. Doyle's cancer treatment was covered without incident by Medicare and OCEBA's Plan M. Compl. ¶ 19. But when Mr. Doyle alerted PHS that he and his wife would be switching from the OCEBA to Humana, he learned that PHS would not accept Humana's coverage plan. *Id.* According to the complaint, this "directly contradict[ed] the claims of both the [letter] and the [accompanying documentation]" they had received from the Town. *Id.*

Thankfully, in mid-January of 2023, plaintiffs were able to secure medical coverage under a *different* Medicare Advantage plan (other than the one from Humana) that PHS would accept. Compl. ¶ 21. But because this coverage was not effective until February 1, 2023, they incurred "far greater out-of-pocket costs and a higher maximum out-of-pocket ceiling." *Id.* In addition,

Mrs. Doyle's scheduled cancer treatment for January 20 was delayed to February 1, causing both plaintiffs to suffer "despair, fear, dread, anxiety, distress, harm, injury, and pain" and Mr. Doyle to "suffer[ ] from trauma associated with [the Town's] betrayal."  Compl. ¶ 22.  According to the complaint, this delay in Mrs. Doyle's treatment ultimately required her to undergo a more difficult and extensive course of treatment.  *Id.* ¶ 23.

## III.  <u>LEGAL STANDARD</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken.  *Goel v.*

*Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs., L.P. v. Ent. Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)).

## IV.  DISCUSSION

Plaintiffs' nine-count complaint asserts claims under 42 U.S.C. § 1983 for a denial of due process (Count One) and equal protection (Count Six), a claim under the Age Discrimination in Employment Act ("ADEA") (Count Three), a claim under the New York State Human Rights Law ("NYSHRL") (Count Four), two claims under the New York State Constitution (Counts Two and Five), and three common law claims for tortious interference (Count Seven), negligence (Count Eight), and breach of contract (Count Nine).

### A.  Federal-Law Claims

Plaintiffs assert an ADEA claim (Count Three) and § 1983 claims for a denial of due process (Count One) and equal protection (Count Six).

### 1.  ADEA (Count Three)

In their opposition, plaintiffs "concede that they have not filed with the EEOC" to administratively exhaust this claim and therefore they agree to "withdraw" this cause of action.  Pls.' Opp'n, Dkt. No. 13 at 19.[1]  Accordingly, plaintiffs' ADEA claim (Count Three) will be dismissed.

---

[1]  Pagination corresponds to CM/ECF header.

**2. 42 U.S.C. § 1983** (Counts One and Six)

Plaintiffs' assert § 1983 claims for the alleged denial of due process (Count One) and equal protection (Count Six).

**i. Individual Members of the Town Board**

Plaintiffs' complaint names as defendants the six active members of the Town Board: Town Supervisor John Deer ("Deer"), Deputy Town Supervisor Sara Bollinger ("Bollinger"), Town Councilor Elaine Denton ("Denton"), Town Councilor Katelyn Kriesel ("Kriesel"), Town Councilor William Nicholson ("Nicholson"), Town Councilor Heather Waters ("Waters").

But plaintiffs' § 1983 claims against these defendants must be dismissed because they are protected by absolute legislative immunity. *Bogan v. Scott-Harris*, 523 U.S. 44, 48 (1998) ("The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law."). As the Second Circuit has repeatedly explained, "[s]tate, regional, and local legislators are entitled to absolute immunity from liability under 42 U.S.C. § 1983 for official action undertaken in the sphere of legitimate legislative activity." *Olma v. Collins*, 499 F. App'x 98, 99 (2d Cir. 2012) (summary order) (cleaned up) (collecting cases).

"[A]bsolute legislative immunity does not shield lawmakers acting in an administrative or enforcement role." *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 27 (S.D.N.Y. 2022). "To determine whether a

legislator is entitled to legislative immunity, the Court must engage in a 'functional' analysis to consider whether the officials' actions were truly legislative." *Cincotta v. Hempstead Union Free Sch. Dist.*, 313 F. Supp. 3d 386, 401 (E.D.N.Y. 2018). This "functional" inquiry is focused on "whether the actions bore all of the hallmarks of traditional legislation, including whether they reflected discretionary, policymaking decisions, implicating the budgetary priorities of the government and the services the government provides to its constituents." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 89 (2d Cir. 2007) (cleaned up).

Measured against this general legal standard, the alleged conduct of the six members of the Town Board was clearly undertaken "in a legislative capacity." The complaint alleges that the "Town" entered negotiations with Humana to change the health insurance coverage without availing itself of certain provisions in the CBA with the police Union. Compl. ¶¶ 15–16. The complaint further alleges that the "Town," presumably through official action by the individual Town Board members, "unilaterally . . . changed" the health insurance coverage. *Id*. ¶ 17. Indeed, this event is alleged to have occurred at the address of the Town Hall in Manlius, New York. *Id*.

In other words, plaintiffs' complaint alleges that the Town's policymaking body reached a policy decision that adversely affected the medical coverage that plaintiffs and other retired police union members received through the

CBA between the Town and the Union.  That conduct is quintessentially legislative.  And because the legislative immunity applies "regardless of an official's motive or intent," the § 1983 claims against these defendants must be dismissed.[2]  *Cincotta*, 313 F. Supp. 3d at 401 (explaining that absolute immunity applies to flawed, improper, and even bad-faith conduct).

### ii.  **The Town**

That leaves one proper defendant for these § 1983 claims: the Town, which is not entitled to assert legislative immunity.  *See, e.g.*, *Olma*, 499 F. App'x at 100; *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) (recognizing it is procedurally acceptable to sue a municipality directly under § 1983).

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012).  In municipal liability cases under § 1983, "the question [is] whether there is a direct causal link between a municipal [or county] policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiffs' complaint does not describe the precise contours of a particular Town policy that might have caused the constitutional violations they have

---

[2] To the extent that plaintiffs might be able to maintain a narrow § 1983 claim against one or more of these individual defendants for some kind of injunctive relief (in an official capacity or otherwise), *see Rowland*, 494 F.3d at 86, that claim would fail for reasons discussed *infra*.

alleged.  Broadly construed, however, plaintiffs' complaint can be understood to assert that the Town (acting through the Board) reached a policy decision (by vote or other means) that adversely affected the medical coverage that plaintiffs and other retired police union members received through the CBA between the Town and the Union.

So the question is whether this alleged policy plausibly caused a violation of plaintiffs' constitutional rights to due process and/or equal protection.

### a.  <u>Due Process</u>

Defendants contend that plaintiffs' § 1983 due process claim must be dismissed because they had adequate alternative ways to assert a meaningful challenge to the Town's adverse action.  Defs.' Mem. at 12–14.  According to defendants, plaintiffs could have pursued a claim with the Union under the CBA and/or filed a state-court Article 78 proceeding.  *Id.*

In opposition, plaintiffs argue that they enjoyed a property interest in their "retiree health benefits" and contend that the mere availability of a post-deprivation Article 78 proceeding does not necessarily satisfy the demands of due process as a matter of law.  Pls.' Opp'n at 19–21.

In reply, defendants point out that plaintiffs completely ignore the fact that they *also* could have petitioned the Union to take action in response to the Town's policy decision.  Defs.' Reply, Dkt. No. 14 at 11.

The Due Process Clause protects procedural and substantive rights. *Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020). Procedural due process requires that "a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

"To assert a violation of procedural due process rights, a plaintiff must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 225 (E.D.N.Y. 2014) (citation omitted). "Notice and an opportunity to be heard are the hallmarks of due process." *Id.*

Upon review, a procedural due process claim based on the alleged change in retiree medical coverage would fail. As an initial matter, it is doubtful that plaintiffs actually have a cognizable property interest in a "specific type of health insurance." *Waltz v. Bd. of Educ. of Hoosick Falls Cent. Sch. Dist.*, 2013 WL 4811958, at *11 (N.D.N.Y. Sept. 10, 2013) (D'Agostino, J.). As Judge D'Agostino has noted, "courts have been reluctant to find a property interest premised on a benefit conferred by a public contract unless that benefit has been denied entirely." *Krey v. Cuomo*, 340 F. Supp. 3d 109, 146 (N.D.N.Y. 2018).

But assuming, for now, that plaintiffs enjoyed a state-created interest in their specific "retiree health benefits" under the CBA with the Union, the availability of a post-deprivation state-court Article 78 proceeding satisfies constitutional due process. *Donohue v. New York*, 347 F. Supp. 3d 110, 138 (N.D.N.Y. 2018) (D'Agostino, J.) (dismissing similar due process claim on summary judgment); *Jackson v. Rosyln Bd. of Educ.*, 652 F. Supp. 2d 332, 345 (E.D.N.Y. 2009) (finding post-deprivation Article 78 proceeding sufficient for constitutional purposes).

Further, as defendants correctly point out, plaintiffs have not alleged that the administrative procedures available in the Union's CBA would have been an inadequate way to challenge this alleged harm. *See, e.g.*, *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008) ("The Due Process Clause is implicated only when plaintiffs can establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy."). Accordingly, plaintiffs' § 1983 due process claim (Count One) must be dismissed.

### b.  Equal Protection

Defendants contend that plaintiffs' § 1983 equal protection claim must be dismissed because the complaint does not plausibly allege that plaintiffs were a member of a suspect class or that they were treated differently from those outside of their protected class. Defs.' Mem. at 18.

In opposition, plaintiffs argue that they are not required to plead membership in a protected class or identify any specific comparators in order to state a valid equal protection claim. Pls.' Opp'n at 14–17. Although they "acknowledge that age and retiree status are not suspect classes," plaintiffs argue that the complaint plausibly alleges that defendants intentionally discriminated against them and treated them differently than younger retirees and active police officers. *Id.*

In reply, defendants point out that the allegations in plaintiffs' complaint are wholly conclusory: there is no plausible indication of any intentional discrimination because there is no suggestion of any similarly situated person who was treated more favorably. Defs.' Reply at 11–12.

The Equal Protection Clause is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "There are a number of common methods for pleading an equal protection claim." *Kisembo v. N.Y. State Office of Children & Family Servs.*, 285 F. Supp. 3d 509, 523 (N.D.N.Y. 2018).

First, "[a] plaintiff could point to a law or policy that 'expressly classifies persons on the basis of race.'" *Floyd v. City of N.Y.*, 959 F. Supp. 2d 540, 570 (S.D.N.Y. 2013) (quoting *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 1999)). Second, "a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *City of*

*Oneonta*, 221 F.3d at 337 (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886)).  Third, "[a] plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus." *Floyd*, 959 F. Supp. 2d at 570 (citation omitted).

Under these theories, the plaintiff "must prove purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (cleaned up); *see also Keles v. Davalos*, 642 F. Supp. 3d 339, 366–67 (E.D.N.Y. 2022).  Plaintiffs have not done any of that in their complaint.  Indeed, courts have repeatedly held that "age" is not a protected class for equal protection purposes.  *See, e.g.*, *Leon v. Rockland Psych. Ctr.*, 232 F. Supp. 3d 420, 431 (S.D.N.Y. 2017).

However, even "[w]here there is no allegation of membership in a protected class, the plaintiff may still prevail on either a 'class of one' or 'selective enforcement' theory." *Brown v. Griffin*, 2019 WL 4688641, at *4 (S.D.N.Y. Sept. 25, 2019).  Pursuant to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), a plaintiff may assert a "class of one" claim by alleging that "they were intentionally treated different from others similarly situated and that there was no rational basis for this difference in treatment." *Doe v. Vill. of Mamaroneck*, 462 F. Supp. 2d 520, 558 (S.D.N.Y. 2006).  Alternatively, pursuant to *LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980), a plaintiff may assert a "selective enforcement" claim by showing that they were treated

differently based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Savino v. Town of Southeast*, 983 F. Supp. 2d 293, 301 (S.D.N.Y. 2013) (citations omitted).

Upon review, there is no indication that plaintiffs have a viable § 1983 Equal Protection claim. As noted *supra*, there is not even a whiff of any class-based animus from any of the named defendants or in the Town's alleged policy decision. Nor is there any hint that the Town treated the two named plaintiffs differently than other similarly situated individuals (*e.g.*, the other retired Union members or perhaps the other CBA beneficiaries) based on any *constitutionally* impermissible criteria. *Cf. FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices."). Accordingly, plaintiffs' § 1983 equal protection claim (Count Six) must be dismissed.

## B. State-Law Claims

Plaintiffs' remaining claims arise under the NYSHRL (Count Four), the New York State Constitution (Counts Two and Five), and related common law (Counts Seven, Eight, and Nine). In light of the fact that all of plaintiffs' federal-law claims are being dismissed, the Court concludes that these state-law claims should be remanded to Supreme Court, Onondaga County.

After all, that is where plaintiffs chose to file this litigation in the first place. To be sure, defendants acted properly in removing the action to this forum on the basis of federal-question jurisdiction; *i.e.*, plaintiffs' complaint alleged claims under § 1983 and the ADEA. Dkt. No. 1 ¶ 6. Removal on that basis was proper because the Court had "original" jurisdiction over plaintiffs' federal claims, 28 U.S.C. § 1331, and, because they arose from the same common set of facts, acquired what is called "supplemental" jurisdiction over the state-law claims, 28 U.S.C. § 1367(a).

But supplemental jurisdiction over state-law claims is discretionary. And where, as here, the federal claims that gave rise to original jurisdiction are being dismissed, courts generally decline to hear the supplemental state-law claims. § 1367(c)(3). Instead, courts can dismiss or remand those state-law claims to the originating jurisdiction. *See, e.g.*, *Chapman v. Crane Co.*, 694 F. App'x 825, 827 (2d Cir. 2017) (summary order) (recognizing same).

Remand is the right approach to this case. It is clear that plaintiffs have not plausibly alleged any federal-law claims. But they may still have one or more viable state-law claims based on this fact pattern. If so, those claims implicate questions about whether the Town acted in accordance with its legislative and/or contractual obligations vis-à-vis the CBA and/or the police Union. Those might be thorny questions, but there is no reason to think they will be of a *federal* constitutional dimension.

In reaching this conclusion, the Court recognizes that an alternative basis for "original" (as opposed to "supplemental") jurisdiction *might* exist over the state-law claims in this case: diversity. 28 U.S.C. § 1332. This is because, even in the absence of a federal question, state-law claims can be heard in federal court if the suit is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. § 1332(a)(1).

Importantly, though, diversity was not asserted as a basis for jurisdiction in defendants' notice of removal. There is a good reason why defendants did not raise it there: the so-called "forum defendant" rule precluded removal on that basis. 28 U.S.C. § 1441(b)(2). So if removal on this basis would have been improper then, it is hard to conclude that it is a valid reason to keep these state-law claims now. *Cf. Stark v. Tryon*, 171 F. Supp. 3d 35, 40–43 (D. Conn. 2016).

Even assuming otherwise, plaintiffs' complaint does not adequately establish diversity jurisdiction. Plaintiffs allege the physical location of the Town, compl. ¶ 6, assert that the six other defendants are "active members" of the Town's Board, *id.* ¶ 7, and allege, essentially in passing, that Mr. and Mrs. Doyle live in New Mexico now, *id.* ¶¶ 4–5.

First off, "residence," standing alone, does not establish "citizenship" for purposes of assessing whether diversity jurisdiction exists. *Canedy v. Liberty Mutual Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997). Second, neither the

complaint nor the notice of removal allege a specific amount in controversy, let alone one greater than $75,000.  Although the complaint suggests that plaintiffs suffered substantial non-economic damages, the lapse in secondary coverage endured for less than a full month.  It is hard to conclude that the amount in controversy exceeds the baseline sum.

Third, separate and apart from these shortcomings, assessing questions about removal involves considerations of state-federal comity.  The removal statute is supposed to be construed narrowly.  And doubts should be resolved in favor of remand.  *See, e.g.*, *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994).  Accordingly, this action will be remanded to Supreme Court, Onondaga County.

## V.  <u>CONCLUSION</u>

Plaintiffs chose to file this case in state court, but defendants removed it. With their § 1983 claims dismissed and their ADEA claim withdrawn, there is no good reason for the rest of this action to remain in federal court.  So it will be sent back.

Therefore, it is

ORDERED that

1.  Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. Plaintiffs' federal-law claims (Counts One, Three, Six) are DISMISSED; and

3. Plaintiffs' state-law claims (Counts Two, Four, Five, Seven, Eight, and Nine) are REMANDED to Supreme Court, Onondaga County.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.


Dated:  March 26, 2024
        Utica, New York.

David N. Hurd
U.S. District Judge